## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| TAMMY MCCRAE-COLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-666 |
| | ) | |
| STARTER HOMES PROGRAMS INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
## SET ASIDE OR VACATE ENTRY OF DEFAULT
## AND FOR LEAVE TO FILE ANSWER

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, Defendants Starter Programs Homes, Inc., d/b/a renttoownhomefinder.com and Lending Cloud Homes; Starter Home Investing, Inc., d/b/a renttoownhomefinder.com and Lending Cloud Homes; Xanadu Marketing, Inc., individually (assumed name Apex Page Builder), d/b/a cloudbasedpersonalloans.com and xanadutrucking.com; and Insurance-Reviewed.com[1] (collectively hereinafter, "Starter Homes Defendants") file this brief in support of their motion to set aside the Clerk's entry of default.

---

[1] Insurance-Reviewed.com is simply a website affiliated with the Starter Homes Defendants; it is not in fact a separate suable entity. (*See* Ex. B: Decl. of Edward Winkler ¶ 3.)

## NATURE OF MATTER

Plaintiff brings an action for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; N.C. Gen. Stat. § 75-102; N.C. Gen. Stat. § 75-104(a); N.C. Gen. Stat. § 66-261; and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* The gravamen of her claims is that the Defendants unlawfully contacted her by telephone calls and text messages. Defendants dispute that they impermissibly contacted her or that they are liable to Plaintiff in any way.

Plaintiff moved for entry of default on June 9, 2022, and the Clerk entered default the next day (June 10, 2022). The Starter Homes Defendants now seek to have the entry of default set aside or otherwise vacated and seek leave to file their Answer to Plaintiff's Second Amended Complaint. (*See* Ex. A: Starter Home Defs.' Proposed Answer ("Prop. Ans.").)

## STATEMENT OF FACTS

### *Summary of Second Amended Complaint*

Plaintiff alleges that the Starter Homes Defendants violated state and federal telemarketing laws by contacting her cell phone without her consent. Plaintiff alleges that on several occasions one or more of the Starter Homes Defendants called or texted Plaintiff's cell phone, which she says is a

2

residential line and listed on the federal "Do Not Call" registry (D.E. #18: Pl.'s Sec. Am. Compl. ("SAC") ¶¶ 19-30.)

Plaintiff denies that she ever opted in to receiving communications from these defendants, even though her complaint acknowledges that when she contacted the registered agent for the Starter Homes Defendants he stated that she had opted in to such contact. (SAC ¶¶ 33-34.) She further contends that she requested of the registered agent that she be removed from their solicitation lists and that he said they would do so, but she nonetheless has received communications afterwards. (*Id.* ¶¶ 39-48.)

*Defenses, Settlement Negotiations, and Motion for Default*

Research by the Starter Homes Defendants into their records has produced evidence that Plaintiff (or at least someone using her name and other identifying information) opted in to receiving communications from them, including telephone calls and text messages. (Ex. B: Decl. of Edward Winkler ("Winkler Decl.") ¶ 5.) Additionally, the Starter Homes Defendants have written policies governing the manner in which telephone and text solicitations must be conducted, and employees are trained on these policies, which are designed to ensure compliance with federal and state laws, like the Telephone Consumer Protection Act and parallel provisions of state law. (*Id.* ¶ 6.)

Research into Plaintiff's background shows substantial evidence that Plaintiff has used the telephone number at issue in this case for her own businesses (*i.e.*, work as a mortgage specialist and as an attorney)[2] and listed it as a business contact number. (*Id.* ¶ 7.)

Shortly after being served with process for the litigation, the Starter Homes Defendants considered settlement and communicated their willingness to discuss settlement. (*Id.* ¶¶ 8-9.) Settlement discussions with Plaintiff then began. (*Id.* ¶ 9.) On the morning of June 9, 2022, these defendants had a telephone call with Plaintiff in which proposals were exchanged. (*Id.*) At the end of the call, Plaintiff was asked for another settlement demand. (*Id.*) Based on her own comments, it was expected Plaintiff would respond within the next 24 hours with a demand that the defendants could consider. (*Id.*) At approximately 4:00 pm that afternoon Plaintiff filed a "Request for Entry of Default." Plaintiff never warned the Starter Homes Defendants that she would be applying for entry of default. (*Id.*) Instead, they relied on what appeared to be Plaintiff's desire to reach a mutually agreeable settlement early in the case. (*Id.* ¶ 10.) The Starter Homes Defendants retained counsel to defend

---

[2] It appears that Plaintiff, while not licensed to practice law in North Carolina, is a member of the bar in Missouri. Her law firm (McCrae-Coley Law, LLC) is incorporated under Missouri law, but its principal office is listed as being in Greensboro, NC. (*See* Ex. C: Missouri Sec'y of State – Business Search: McCrae-Coley Law, LLC.)

this suit on June 10, 2022, after they learned of Plaintiff's motion. (*Id.* ¶ 13.) Before counsel could act, the Clerk entered the default requested by Plaintiff on June 10, 2022. (*Id.* ¶ 14.) These defendants and their counsel have worked as expeditiously as possible under the circumstances to prepare their motion to set aside the default, a supporting brief, a draft answer, and a declaration as well as to research and locate documents needed to properly support this motion. (*Id.* ¶ 15.)

## QUESTIONS PRESENTED

1. Whether the June 10, 2022 entry of default by the Clerk was improper and should be set aside under Federal Rule of Civil Procedure 55(c) because the Starter Homes Defendants had appeared by implication?

2. Whether the Starter Homes Defendants have shown good cause to set aside the Clerk's entry of default under Rule 55(c)?

3. Whether, assuming the Court sets aside the Clerk's entry of default, the Starter Homes Defendants should be granted a reasonable amount of time to answer Plaintiff's Second Amended Complaint?

## ARGUMENT

The need for this motion illustrates the maxim that no good deed goes unpunished. At the time she filed her motion for entry of default, Plaintiff and these defendants were actively discussing settlement of her claims against

5

them. Specifically, Plaintiff was asked for a settlement demand on the morning of the day she moved for entry of default. Instead of responding to the inquiry with a demand, and without warning, Plaintiff filed her motion for entry of default against the Starter Homes Defendants that afternoon.

As an initial matter, the Starter Homes Defendants were not in default because they had appeared by implication. This fact alone makes entry of default improper. But even assuming they were in default, they can easily establish show good cause under the Fourth Circuit's test for setting aside an entry of default against a non-appearing defendant.

## I. ENTRY OF DEFAULT WAS IMPROPER AND SHOULD THUS BE SET ASIDE BECAUSE THE STARTER HOMES DEFENDANTS HAD APPEARED BY IMPLICATION.

The Starter Homes Defendants were not in fact in default when Plaintiff's motion was filed because they had appeared by implication. "An appearance by implication does not arise by filing or physical appearance before the court." *Trust Co. Bank v. Tingen-Millford Drapery, Inc.*, 119 F.R.D. 21, 22 (E.D.N.C. 1987). Such an appearance instead occurs when there is "an objective manifestation of intent on the part of the defendant or counsel to defend the action." *Id.* (citation omitted). Appearances by implication "are often sufficient to constitute an appearance for purposes of Rule 55." *Id.*

6

For example, in *Trust Co. Bank v. Tingen-Millford Drapery, Inc.*, the Court found that a telephone conversation in which defense counsel requested an extension of time to answer sufficed to show the defendant's "intention of defending the suit," and thus there was an appearance by implication that rendered "entry of judgment under Rule 55(b)(1) . . . improper." 119 F.R.D. 21, 23 (E.D.N.C. 1987). This one telephone call established an appearance by implication, even though the attorneys did not agree on the request for extension. *Id.; see Heleasco Seventeen v. Drake*, 102 F.R.D. 909, 914 (D. Del. 1984) (finding two conversations between counsel about an extension of time to answer sufficed to show intent to defend); *see also FROF, Inc. v. Harris*, 695 F. Supp. 827, 830 (E.D. Pa. 1988) (conversations among counsel about whether service had been proper constituted appearance by implication).

The Court's discussion in *Starr Consulting, Inc. v. Global Resources Corp.*, Case No. 1:06CV586, 2007 U.S. Dist. LEXIS 90994, 2007 WL 4380101 (M.D.N.C. Dec. 11, 2007), is especially instructive, even though it concerns a Rule 60 motion to set aside entry of a default judgment. In that case, the Court recognized that the parties' settlement discussions showed the defendant's intent to defend the suit. Nevertheless, the plaintiffs "'sought to reap [a] tactical advantage,' by filing for an entry of default with the Clerk of Court less than one month after the February 16, 2007, telephone conversation with [the

defendant]." *Starr Consulting, Inc.*, 2007 U.S. Dist. LEXIS 90994 at *9 (quoting *Charlton L. Davis & Co., v. Fedder Data Ctr., Inc.*, 556 F.2d 308, 309 (5th Cir. 1977)); *cf. Ins. Co. of N. Am. v. S/S Hellenic Patriot*, 87 F.R.D. 136, 139 (S.D.N.Y. 1980) ("The rush to enter judgment without such notice smacks too much of the 'sporting theory of justice.'") (citations and internal quotation marks omitted).

In the present case, Plaintiff moved for entry of default on the very day she had engaged in settlement discussions with the Starter Homes Defendants. She filed her motion on the afternoon of June 9 after having been asked for a settlement demand during a 10:00 am conference call. After the morning call, the Starter Homes Defendants expected Plaintiff to respond to them with a settlement demand so that settlement talks could continue with the hope of resolving the matter and thereby saving everyone time and resources. Instead, they received a motion for entry of default, which appears to have been an effort at gaining a "tactical advantage," as in *Starr Consulting*.

By discussing settlement with Plaintiff, the Starter Homes Defendants manifested their intent to defend this action and thus made an appearance by

8

implication.[3] This consideration alone makes entry of default under Rule 55(a) improper and warrants setting aside the entry of default.

## II. EACH OF THE FACTORS TO BE CONSIDERED IN DECIDING WHETHER TO SET ASIDE ENTRY OF DEFAULT AGAINST A NON-APPEARING DEFENDANT UNDER RULE 55(c) FAVORS GRANTING RELIEF TO THE STARTER HOMES DEFENDANTS.

Even if the Court disagrees that the Starter Homes Defendants appeared by implication, the factors a Court is to consider when asked to set aside a default by a defendant who made no appearance all weigh in favor of setting aside the entry of default. Under Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause[.]" The law disfavors entries of default. *Colleton Preparatory Acad., Inc. v. Hoover Universal*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.") (citations omitted). Therefore, as a general rule, "a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249,

---

[3] Plaintiff's motion for default states that it is based on the defendants' "failure to answer or otherwise pled." (D.E. #27: Request for Entry of Default at 1.) The standard in Rule 55(a), however, is whether a defendant has "failed to plead *or otherwise defend.*" Fed. R. Civ. P. 55(a) (emphasis added). Thus, Plaintiff articulated the wrong legal standard (using one that excludes appearances by implication) when she filed her motion.

251 (4th Cir. 1967) (citing *Moore's Fed. Prac.*); *Davis v. Univ. of N.C. at Greensboro*, Case No. 1:19CV661, 2022 U.S. Dist. LEXIS 6245 at *3, 2022 WL 112192 (M.D.N.C. Jan. 12, 2022) ("[A]n 'extensive line of decisions' has held that 'Rules 55(c) and 60(b) are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'") (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)).

The Fourth Circuit has set forth six factors for judging a motion to set aside an entry of default: "[1] whether the moving party has a meritorious defense, [2] whether it acts with reasonable promptness, [3] the personal responsibility of the defaulting party, [4] the prejudice to the party, [5] whether there is a history of dilatory action, and [6] the availability of sanctions less drastic." *Payne v. Brake*, 439 F.3d 198, 205-06 (4th Cir. 2006) (citations omitted). A party need not satisfy each of these factors for the court to set aside the default. *See, e.g., Jafary v. City of Beckley*, Case No. 5:20-cv-00647, 2020 U.S. Dist. LEXIS 216929 at *6, 2020 WL 6797354 (S.D. W. Va. Nov. 19, 2020) (setting aside default where some factors weighed in favor of setting aside and others did not).

## A. THE STARTER HOMES DEFENDANTS HAVE MERITORIOUS DEFENSES TO PLAINTIFF'S CLAIMS.

The proposed answer to the Second Amended Complaint and the declaration of attorney Edward Winkler more than sufficiently establish that

10

the Starter Homes Defendants have meritorious defenses to Plaintiff's suit. "[A]ll that is necessary to establish the existence of a 'meritorious defense' [is] a presentation or proffer of evidence, which if believed would permit either the Court or the jury to find for the defaulting." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The moving party is not required to "present any particular kind of a defense, or persuade the Court of the ultimate validity of the defenses presented, in order to have a meritorious defense for purposes of setting aside[.]" *Capital Concepts, Inc. v. CDI Media Grp. Corp.*, No. 3:14-cv-00014, 2014 U.S. Dist. LEXIS 103318 at *19, 2014 WL 3748249 (W.D. Va. July 29, 2014); *see GE Medical Sys. Info. Techs. v. Ansar, Inc.*, Case No. 04-CV-27752004 U.S. Dist. LEXIS 26551, 2004 WL 2988513 (E.D. Pa. Dec. 23, 2004) ("It is not necessary for a party to establish beyond all doubt that it will prevail at trial on the defense, but rather that the proffered defense is not factually unmeritorious."); *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001) ("The moving party does not have to prove conclusively that he would prevail[.]") (quotations and citation omitted).

The proposed answer of the Starter Homes Defendants denies the material allegations of Plaintiff's Second Amended Complaint. (*See* Prop. Ans.) These denials are further supported by an accompanying declaration from

11

Edward Winkler. Together they show that the Starter Homes Defendants have a strong defense against each of Plaintiff's causes of action.

### 1. Telephone Consumer Protection Act Claims

Plaintiff brings TCPA claims under both 47 U.S.C. § 227(b) (improper use of automated dial equipment) and 47 U.S.C. § 227(c) (calling a consumer on the "Do Not Call" list). The Starter Homes Defendants are prepared to litigate both of these claims on the merits and show why Plaintiff cannot prevail.

Under 47 U.S.C. § 227(b)(1), the provision on which Plaintiff premises her first cause of action, generally solicitors may not make calls to cellular phones using automated dialing equipment,[4] but there are several exceptions. Among the most important is an exception for when the call is made with the "prior express written consent" of the person called. *See* 47 U.S.C. § 227(b)(1)(A) (exempting from prohibition those calls "made with the prior express consent of the called party"); *id.* § 227(b)(1)(B) (proscribing certain calls made "without the prior express consent of the called party"). The Starter Homes Defendants have evidence that Plaintiff must have submitted her information online and in the process opted in to receiving calls from them.

---

[4] The Starter Homes Defendants dispute that they use automated dialing equipment, as defined by the law.

12

(*See* Winkler Decl. ¶ 5 & Ex. B-1.) Such express written consent constitutes a defense to this claim.

Plaintiff's second cause of action, which is brought under 47 U.S.C. § 227(c) similarly fails. First, while Plaintiff complains of alleged calls and texts to a *residential* number, the Starter Homes Defendants intend to present evidence that Plaintiff has used this very number for *commercial* purposes related to her business, apparently even listing the number online. *See* 47 U.S.C. § 227(c)(1) (directing the creation of the "Do Not Call" list to protect "*residential* telephone subscribers' privacy") (emphasis added); 47 CFR § 64.1200(c)(2)) ("No person or entity shall initiate any telephone solicitation to . . . [a] *residential* telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]") (emphasis added). (*See* Winkler Decl. ¶ 7 & Exs. B-2, B-3, B-4.) She is thereby deprived of standing to sue and taken her out of the ambit of the TCPA.

Similar to her first cause of action related to automatic dialing equipment, Plaintiff's apparent opting in to receiving contact from these Defendants would also bar liability under 47 U.S.C. § 227(c). *See* 47 CFR § 64.1200(c)(2)(ii) (no liability when the solicitor "has obtained the subscriber's prior express invitation or permission").

13

Federal regulations further preclude liability under § 227(c) for the making of calls to subscribers on the "Do Not Call" list when the call "is the result of error and that as part of its routine business practice, it meets . . . [certain] standards." 47 CFR § 64.1200(c)(2)(i). The relevant standards include the following: (1) written procedures designed to comply with the "Do Not Call" list; (2) training of personnel in compliance; (c) accessing the "Do Not Call" list to ensure compliance with the law; (d) not disseminating the list for any purpose other than ensuring compliance. 47 CFR § 64.1200(c)(2)(i). The Starter Homes Defendants are prepared to establish that they have procedures to ensure compliance with these regulations. (*See* Winkler Decl. ¶ 6.)

For all of these reasons, the Starter Homes Defendants cannot be liable under the TCPA.

### 2. N.C. Gen. Stat. § 75-102 and 104(a) Claims

A "telephone subscriber" cannot sue a telephone solicitor under N.C. Gen. Stat. § 75-102 for calling someone on the "Do Not Call" registry, unless the plaintiff is an "individual who subscribes to a *residential* telephone service." N.C. Gen. Stat. § 101(10) (defining "telephone subscriber") (emphasis added). As previously discussed, Plaintiff uses the number in question for her businesses and appears to have advertised it widely for that work. (*See*

14

Winkler Decl. ¶ 7 & Exs. B-2, B-3, B-4; Ex. D: VA OGC – Accreditation Search Results.) Therefore, she is not a "residential" subscriber covered by § 75-102.

Additionally, as with the TCPA claims, these defendants believe Plaintiff opted into receiving contact from them, which would be another defense. N.C. Gen. Stat. § 103(a)(1) (defense when contact made with "subscriber's prior express invitation or permission."); *see also id.* § 103(a)(2) (exception for an established business relationship between the subscriber and solicitor).

Plaintiff also asserts a claim under N.C. Gen. Stat. § 75-104(a) (the restriction on use of automatic dialing systems) for sending unsolicited text messages. (*See* SAC ¶¶ 106-111.) By its very terms, however, this provision only governs use of an "automatic dialing and recorded message player." N.C. Gen. Stat. § 75-104(a). Such equipment is defined as "automatic equipment that incorporates a storage capability of telephone numbers to be *called* or a random or a sequential number generator capable of producing numbers to be *called* that, working alone or in conjunction with other equipment, disseminates a *prerecorded message* to the telephone number *called.*" *Id.* § 75-101(2) (emphasis). This definition thus excludes a text message from § 75-104(a)'s scope since a text involves neither a "call" nor a "prerecorded message." Though some parts of the Article 4 of Chapter 75 have been amended to cover the advent of text messing, § 75-104(a) has not, and no court appears to have

15

ever interpreted § 75-104(a) to cover texts messages. Thus, even if the Starter Homes Defendants do use such equipment (a point they dispute), it would not apply to text messages under this section.

Finally, it is a defense to suits under Article 4 of Chapter 75, that "the telephone solicitor complied with G.S. 75-102(d)." Section 75-102(d) provides:

> Every telephone solicitor shall implement systems and written procedures to prevent further telephone solicitations to any telephone subscriber who has asked not to be called again at a specific number or numbers or whose telephone number appears in the "Do Not Call" Registry. Every telephone solicitor shall train, monitor, and enforce compliance by its employees and shall monitor and enforce compliance by its independent contractors in those systems and procedures. Every telephone solicitor shall ensure that lists of telephone numbers that may not be contacted by the telephone solicitor are maintained and recorded. Compliance with the time requirements within the Telemarketing Sales Rule for incorporating and complying with updated versions of the "Do Not Call" Registry shall constitute compliance with North Carolina law.

Again, the Starter Homes Defendants are prepared to establish they have procedures like those described in this section, which would thereby bar Plaintiff's recovery under either N.C. Gen. Stat. § 75-102 or N.C. Gen. Stat. § 104(a). (*See* Winkler Decl. ¶ 6.)

16

### 3. N.C. Gen. Stat. § 66-261 Claim

Under N.C. Gen. Stat. § 66-261, certain telephone solicitors are required to register with the North Carolina Secretary of State. No express private right of action is created to enforce this provision. Instead, the consequences for its violation are limited to criminal prosecution and a civil action by the Attorney General. *See* N.C. Gen. Stat. § 66-266.

North Carolina courts rarely recognize implied causes of action, and generally a private cause of action for violation of a statute only exists when such a remedy is expressly created by the legislature. *See Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 339, 511 S.E.2d 41, 44 (1999). No North Carolina appellate court has ever recognized a private cause of action under § 66-261, nor does a search of federal case law find any case where the court found that it creates one. Moreover, the existence of a statutory scheme for enforcement by state agencies is strong evidence against an implied right of action. *Cf., e.g., See, e.g., Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 281, 715 S.E.2d 541, 552 (2011).

Therefore, even assuming they failed to comply with § 66-261 (an assertion they dispute), the Starter Homes Defendants have a meritorious defense to this claim.

17

### 4. *Unfair and Deceptive Trade Practices Act Claim*

Based on the allegations in her Second Amended Complaint, Plaintiff's claim under the North Carolina Unfair and Deceptive Trade Practice Act ("UDTA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, fails as a matter of law because—even if she can prove the alleged deceptive conduct (*viz.*, information and photographs online)—she cannot establish that it "proximately caused an actual injury" to her specifically. *Noble v. Hooters of Greenville, LLC*, 199 N.C. App. 163, 166, 681 S.E.2d 448, 452 (2009) ("The elements of a claim for unfair or deceptive trade practices are: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) *which proximately caused actual injury to the plaintiff* or to his business." (internal quotation marks and citations omitted) (emphasis added). Plaintiff did not engage in any business with these defendants, and her complaint does not provide any other basis for how she could have been harmed. As a result, there could not have been the required reliance, let alone *reasonable* reliance, by her on any purported misrepresentation by the defendants. *See DC Custom Freight, LLC v. Tammy A. Ross & Assocs.*, 273 N.C. App. 220, 222, 848 S.E.2d 552, 232 (2020) (citing *Bumpers v. Comm'ty Bank of N. Va.*, 367 N.C. 81, 747 S.E.2d 220 (2013)) ("UDTP claims based on misrepresentation require a

showing of both actual and reasonable reliance to prove that the misrepresentation caused damages[.]").

Additionally, the Starter Homes Defendants deny that they engaged in any deceptive conduct, including use of false names or false customer reviews. (*See* Prop. Ans. ¶¶ 26, 90, 108.)  Therefore, the entry of default should be set aside so that these defendants may have a chance to defend themselves against these allegations.

## B. DEFENDANTS ACTED WITH REASONABLE PROMPTNESS IN MOVING TO SET ASIDE THE DEFAULT.

The same day that entry of default was entered (which was one day after Plaintiff filed her motion), the Starter Homes Defendants retained undersigned counsel.  (*See* Winkler Decl. ¶¶ 13-15.)  The next business day undersigned counsel filed a notice of appearance that also put the parties and Court on notice of the Starter Homes Defendants' intent to file a motion to set aside the default.  (*See* D.E. #29: Notice of Appearance.) ("Notice is hereby further given that these defendants intend to promptly file a motion and supporting memorandum seeking to set aside the Clerk's June 10, 2022 entry of default against them.")  Finally, this motion was filed only fourteen days after entry of default.

Courts have found reasonable promptness when much more time than the instant fourteen days elapsed between the entry of default and the motion

to set it aside. *See Reg'l Med. Ctr. of Orangeburg v. Salem Servs. Grp., LLC*, Case No. 2:19-cv-02958-DCN, 2020 U.S. Dist. LEXIS 71867, 2020 WL 1956515, at *3 (D.S.C. Apr. 23, 2020) ("District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside."); *J & J Sports Prods., Inc. v. Santillan*, No. 1:11CV1141, 2012 U.S. Dist. LEXIS 95574 at *8, 2012 WL 2861378 (M.D.N.C. July 11, 2012) (motion to set aside default reasonably prompt when filed "three months after service of the Complaint and 28 days after the Clerk entered a default") (citing V*ick v. Wong*, 263 F.R.D. 325, 330 (E.D. Va. 2009) (reasonable promptness found where motion to set aside filed two months after clerk entered default and a few weeks after filing of motion for entry of default judgment) and *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001) (reasonable promptness found where motion to set aside filed "more than a month" after entry of default)); *see also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (calling it "awakened speed," Fourth Circuit found reasonable promptness when motion to vacate was filed two weeks after entry of default).

In *USF Ins. Co. v. Bullins Painting, Inc.*, the defendant did not first consult with an attorney until "two months after default was entered and three

and a half months after he was notified that [the plaintiff] was seeking default judgment." Case No. 1:11CV410, 2012 U.S. Dist. LEXIS 136679 at *6, 2012 WL 4462004 (M.D.N.C. Sept. 25, 2012). The defendant's counsel then filed the motion to set aside the default "less than two weeks after being retained." *Id.* The court found such action to constitute reasonable promptness.

Here, the Starter Homes Defendants have been diligent and acted as quicky as they could to set aside the entry of default, filing their motion more promptly than in numerous other cases where reasonable promptness have been established. Accordingly, this factor favors the Starter Homes Defendants.

## C. DEFENDANTS ARE NOT PRIMARILY TO BLAME FOR THE ENTRY OF DEFAULT, AS THEY RELIED ON PLAINTIFF'S WILLINGNESS TO ENGAGE IN SETTLEMENT DISCUSSIONS.

The Starter Homes Defendants are not primarily responsible for the default. While consideration of the personal responsibility of the defaulting party usually involves an error by the party's attorney and whether the party should be held liable for its representative's mistake, *see, e.g.*, *Moradi*, 673 F.2d at 727-78, in this case it is not a matter of attorney fault but instead that of *Plaintiff* for the entry of default.

Plaintiff in this case moved for entry of default while in the middle of settlement discussions, without informing the Court in her motion that such

21

discussions had occurred. See *Starr Consulting, Inc.*, 2007 U.S. Dist. LEXIS 90994 at *9 ("The Court also notes that . . . Plaintiffs made no mention [in their motion] of their extensive contact for months thereafter with [defendant] and its representatives."). In fact, a representative of the Starter Homes Defendants also attended (though did not speak during) the Rule 26(f) conference on June 7, 2022. (*See* D.E. #32: Order at 1 n.1.) This pertinent fact, too, was not disclosed by Plaintiff.

Moreover, the Starter Homes Defendants' inaction on filing an answer was induced by Plaintiff's apparent willingness to potentially settle the case and to engage in such discussions in good faith. (*See* Winkler Decl. ¶¶ 9-10.) The Starter Homes Defendants' misplaced trust supplies grounds for setting aside the entry of default, much as in *Combustion Sys. Sales, Inc. v. Eastern Metal Prods. & Fabricators, Inc.*, 112 F.R.D. 685 (M.D.N.C. 1986). As with the present case, the parties in that case had been engaging in settlement discussions when the plaintiff moved for entry of default. The Court held that "Defendant's prompt, forthright action throughout justifies setting aside the default, especially where the parties engaged in negotiations and *plaintiff may not have explicitly warned defendant that a motion for default was about to be made.*" *Id.* at 691 (citations omitted and emphasis added). Notably, in *Combustion System Sales,* the default was entered after a deadline for settling

22

that the plaintiff had given the defendant. Here, however, there was no such announced deadline, as the Starter Homes Defendants were expecting a settlement demand, not a motion for default, when Plaintiff suddenly filed, having never said she was going to move for default. (*Id.* ¶ 9.)

Therefore, the Starter Homes Defendants should not be seen as the parties responsible for the entry of default, and this factor should be held to weigh in favor of setting aside the default entered by the Clerk.

## D. SETTING ASIDE THE ENTRY OF DEFAULT WILL NOT CAUSE PREJUDICE TO THE PLAINTIFF.

Prejudice is the plaintiff's burden to prove. *Combustion Sys.*, 112 F.R.D. at 691 ("The burden of showing prejudice is on plaintiff."). The fact that the plaintiff is denied a quick victory and required to defend the case on the merits is not prejudice. *See Augusta Fiberglass Coatings, Inc.*, 843 F.2d 808, at 812 ("As to prejudice, we perceive no disadvantage to [the defendant] beyond that suffered by any party which loses a quick victory."); *Russell v. Krowne*, Case No. DKC 08-2468, 2013 U.S. Dist. LEXIS 583 at *9-10, 2013 WL 66620 (D. Md. Jan. 3, 2013) ("[N]o prejudice inheres simply because . . . Plaintiff will bear the burden of proving Defendants' liability[.]"). Instead, prejudice generally involves the loss of evidence or witnesses or an interference with the plaintiff's discovery, none of which are present in this case where discovery has not even

23

commenced.  *See Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 952-53 (4th Cir. 1987).

Mere delay is also not prejudice.  *Colleton*, 616 F.3d at 418.  And here there is at most only slight delay.  Counsel for the Starter Homes Defendants entered an appearance one business day after entry of default and has agreed to the Rule 26(f) Report as well as the report required by Local Rule 5.5.  (*See* D.E. #30 & 31.)  The Starter Homes Defendants are ready to proceed according to the same timeline as the other parties in this case.

In contrast to Plaintiff, the Starer Home Defendants "will certainly be prejudiced if not permitted the opportunity to defend this case on the merits." *Ohio Sec. Ins. Co. v. K R Enters.*, Case No. 1:15-16264, 2019 U.S. Dist. LEXIS 4580 at *8, 2019 WL 166765 (S.D. W. Va. Jan. 9, 2019) (finding prejudice to the defendant outweighs any prejudice to the plaintiff).  This factor therefore also weighs in favor of setting aside the entry of default.

## E. THERE IS NO HISTORY OF DILATORY ACTION BY THESE DEFENDANTS.

The Starter Homes Defendants have not been dilatory.  *Morgan v. Wells Fargo Bank, N.A.*, C/A No. 1:15-cv-4032-JFA, 2017 U.S. Dist. LEXIS 226386 at *12, 2017 WL 11285493 (D.S.C. Jan. 11, 2017) (stating that while defendant did not answer the complaint, "this one instance of dilatory conduct does not weigh in [the plaintiff's] favor").  The failure to answer the complaint by these

24

defendants was not willful, and they have not avoided service or otherwise delayed this action. To the contrary, they were trying to expedite the case by bringing it to an early settlement when the default was requested by Plaintiff and entered by the Court. *See Combustion Sys. Sales, Inc*, 112 F.R.D. at 691. Thus, this factor weighs in favor of the Starter Homes Defendants.

## F. LESS DRAMATIC SANCTIONS ARE AVAILABLE.

Often courts award attorneys' fees to the plaintiff for the filing of the motion for entry of default and perhaps also for opposing the motion to set aside the default. *See, e.g.*, *Buttar v. November*, Case No. 3:10cv668, 2011 U.S. Dist. LEXIS 61891 at *22, 2011 WL 2375492 (W.D.N.C. June 9, 2011) ("The court would certainly consider costs and fees incurred in bringing the default and in responding to the motion to set it aside, but only at the conclusion of trial[.]"). Because Plaintiff is *pro se*, that is not an option in this case. *See Kay v. Ehrler*, 499 U.S. 432, 437-38, 113 L. Ed. 2d 486 (1991) (lawyer proceeding *pro se* not entitled to attorney's fees under Title VII); *Rossmann v. Lazarus*, No. 1:08-cv-316-JCC, 2009 U.S. Dist. LEXIS 17082, 2009 WL 586416, at *3 (E.D. Va. Mar. 5, 2009) ("[T]he majority of the circuits have weighed in against allowing *pro se* attorney's fees for attorneys in various types of actions[.]").[5]

---

[5] This prohibition on awarding attorneys' fees has likewise been applied to requests for sanctions. *See, e.g., Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1377-78 (Fed. Cir. 2002) (sanctions under Rule 37); *DiPaolo v. Moran*, 277 F. Supp. 2d 528, 536 (E.D. Pa. 2003) (sanctions under 28 U.S.C. § 1927 and Rule 11).

25

Given Plaintiff's apparent attempt to use a motion for default as a negotiating tactic rather than a genuine effort to advance the litigation, no sanction against the Starter Homes Defendants is needed. Indeed, as a result of Plaintiff's moving for default without warning, the Starter Homes Defendants have had to incur attorney's fees just to file and brief this motion. To the extent that a sanction is deemed necessary, these defendants accept a shorter period to answer than would otherwise be available. *See Morgan*, 2017 U.S. Dist. LEXIS 226386 at *12 (shortened answer period held to be available lesser). Furthermore, the Court can always caution these defendants that it will consider this issue in the event they engage in any delay in the future. *See, e.g., Galvan v. Walt Disney Parks & Resorts, U.S., Inc.*, Case No. CV 18-01721-AB (FFM), 2019 U.S. Dist. LEXIS 228049 at *7 (C.D. Cal. Dec. 20. 2019) (holding on Rule 11 motion that, "because the Court is cautiously optimistic that [counsel] will not repeat this mistake, the Court finds that this Order's admonishment is a sufficient sanction"). The increased likelihood of sanctions in the future is a danger the Starter Homes Defendants will not take lightly.

Notwithstanding Plaintiff's *pro se* status then, less dramatic sanctions than default are available to the Court, and this factor—like the preceding factors—weighs in favor of the entry of default being set aside.

26

## III. THE COURT SHOULD EXTEND THE TIME TO FILE AN ANSWER.

Assuming the Court grants the Starter Homes Defendants' motion to set aside the entry of default, they respectfully ask that as part of the relief the Court extend the time for the filing of their answer until five (5) days after entry of the Court's order. *Cf.* Fed. R. Civ. P. 6(b).[6] As shown by the proposed answer filed as an exhibit in support of this motion, the Starter Homes Defendants are fully prepared to promptly file an answer and proceed to defend this case on the merits.

## CONCLUSION

For the foregoing reasons, the Starter Homes Defendants respectfully ask this Court to set aside or otherwise vacate the entry of default entered by the Clerk on June 10, 2022; grant them leave to answer to Plaintiff's Second Amended Complaint within five days, or another period of time deemed reasonable by the Court, after the setting aside of said default; and grant them such other and further relief as the Court deems just and proper.

---

[6] These Defendants anticipate filing the proposed answer submitted with this motion, but would ask leave to make revisions to the document ultimately filed so as to account for any new information they may learn while the motion is pending and to make any needed non-substantive technical corrections (*e.g.*, corrections to grammar, spelling, or formatting).

27

Respectfully submitted, this the 24th day of June, 2022.

/s/B. Tyler Brooks
B. Tyler Brooks (N.C. Bar No. 37604)
Attorney for Starter Homes Defendants
LAW OFFICE OF B. TYLER BROOKS, PLLC
P.O. Box 10767
Greensboro, North Carolina 27404
Telephone: (336) 707-8855
Fax: (336) 900-6535
Email: btb@btylerbrookslawyer.com

28

## **CERTIFICATE OF WORD COUNT**

The undersigned counsel certifies that the foregoing brief complies with Local Civil Rule 7.3(d) in that, according to the word count feature of his word processing software, it contains less than 6,250 words, excluding those parts that are allowed to be excluded by the Rule. According to the word count feature, this brief contains 6,106 words.

<u>/s/B. Tyler Brooks</u>
B. Tyler Brooks

29

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically on June 24, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including the counsel of record for defendants indicated below. It has also been mailed to the *pro se* plaintiff at the below physical address.

/s/B. Tyler Brooks
B. Tyler Brooks

**SERVED:**

Tammy McCrae-Coley
1400 Battleground Avenue
Suite 116-L
Greensboro, NC 27408

*Pro se Plaintiff*

Mark A. Nebrig
William M. Butler
MOORE & VAN ALLEN, PLLC
100 North Tryon Street, Floor 47
Charlotte, NC 28202-4003
marknebrig@mvalaw.com
billbuter@mvalaw.com

30

Sean M. Sullivan
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
seansullivan@dwt.com

*Counsel for Defendants Nations Info Corp.*
*d/b/a Creditreview.com and*
*YourScoreandMore.com and*
*Get Rent to Own Corp.*
*d/b/a Yourrent2own.com*

31