IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TAMMY MCCRAE-COLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-666 |
| ) | |
| STARTER HOMES PROGRAMS INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**STARTER HOMES DEFENDANTS' TRIAL BRIEF**

Pursuant to the Court's orders, Defendants Starter Programs Homes, Inc., d/b/a renttoownhomefinder.com and Lending Cloud Homes; Starter Home Investing, Inc., d/b/a renttoownhomefinder.com and Lending Cloud Homes; Xanadu Marketing, Inc., individually (assumed name Apex Page Builder), d/b/a cloudbasedpersonalloans.com and xanadutrucking.com; and Insurance-Reviewed.com (collectively hereinafter, "Starter Homes Defendants" or "Defendants") hereby file the following trial brief:

**NATURE OF THE MATTER**

Plaintiff brings an action for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; N.C. Gen. Stat. § 75-102; N.C. Gen. Stat. § 75-104(a); N.C. Gen. Stat. § 66-261; and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. The

gravamen of her claims is that the Defendants unlawfully contacted her by telephone calls and text messages. Defendants dispute that they impermissibly contacted her or that they are liable to Plaintiff.

## ANTICIPATED EVIDENCE

*Anticipated Evidence from Plaintiff*

Plaintiff alleges that the Starter Homes Defendants violated federal and state telemarketing laws by contacting her cell phone without her consent. Plaintiff alleges that on several occasions one or more of the Starter Homes Defendants called or texted Plaintiff's cell phone, which she says is a residential line and listed on the federal "Do Not Call" registry (D.E. #18: Pl.'s Sec. Am. Compl. ("SAC") ¶¶ 19-30.)

Plaintiff denies that she ever opted in to receiving communications from these Defendants, even though her complaint acknowledges that when she contacted the registered agent for the Starter Homes Defendants he stated that she had opted in to such contact. (SAC ¶¶ 33-34.) She further contends that she requested of the registered agent that she be removed from their solicitation lists and that he said they would do so, but she nonetheless has received communications afterwards. (*Id.* ¶¶ 39-48.)

2

Case 1:21-cv-00666-CCE-JLW   Document 61   Filed 01/30/23   Page 2 of 15

*Anticipated Evidence from the Defendants*

Research by the Starter Homes Defendants into their records has produced evidence that Plaintiff (or at least someone using her name and other identifying information) opted in to receiving communications from them, including telephone calls and text messages. (D.E. #33-2: Ex. B: Decl. of Edward Winkler ("Winkler Decl.") ¶ 5.) Additionally, the Starter Homes Defendants have written policies governing the manner in which telephone calls and text solicitations must be conducted, and employees are trained on these policies, which are designed to ensure compliance with federal and state laws, like the Telephone Consumer Protection Act and parallel provisions of state law. (*Id.* ¶ 6.) Research into Plaintiff's background shows substantial evidence that Plaintiff has used the telephone number at issue in this case for her own businesses and listed it as a business contact number. (*Id.* ¶ 7.)

Additionally, it is expected that Plaintiff will not present any evidence of actual damages, but instead will rely exclusively on the statutory damage provisions in the statutes under which she sues.

Defendants anticipate the following as witnesses they are likely to call at trial: Plaintiff Tammy McCrae-Coley; Defendants' Corporate Counsel Edward Winkler, Esq.; Defendants' President/CEO Joe Delfgauw; and Kyle Van Leuven.

# ARGUMENT

Defendants believe that many, if not all, of Plaintiff's claims will not be sufficiently supported by the evidence to be submitted to the jury. Whether submitted to the jury or not, Defendants anticipate arguing as follows at trial:

## I. CAUSES OF ACTION AND AFFIRMATIVE DEFENSES

### A. Telephone Consumer Protection Act (TCPA) Claims

Plaintiff brings TCPA claims under both 47 U.S.C. § 227(b) (improper use of automated dial equipment) and 47 U.S.C. § 227(c) (calling a consumer on the "Do Not Call" list). Under 47 U.S.C. § 227(b)(1), the provision on which Plaintiff premises her first cause of action, generally telephone solicitors may not make calls to cellular phones using automated dialing equipment, but there are several exceptions.

Among the most important is an exception for when contact is made with the "prior express written consent" of the person called. *See* 47 U.S.C. § 227(b)(1)(A) (exempting from prohibition those calls "made with the prior express consent of the called party"); *id.* § 227(b)(1)(B) (proscribing certain calls made "without the prior express consent of the called party"). Defendants will present evidence that Plaintiff must have submitted her information online and, in the process, opted in to receiving calls and texts from them. Thus, the evidence will show that the communications on which Plaintiff bases her

4

claims flowed directly from her own actions. Such express written consent constitutes precludes Plaintiff from recovery under the TCPA.

Defendants also dispute that they use automated dialing equipment, as defined by the law. (*See* Winkler Decl. ¶ 5 & Ex. B-1.) "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

Plaintiff's second TCPA cause of action, which is brought under 47 U.S.C. § 227(c) similarly fails. First, while Plaintiff complains of alleged calls and texts to a residential number, Defendants intend to present evidence that Plaintiff has used the very number at issue for commercial purposes related to her business, even listing the number online. *See* 47 U.S.C. § 227(c)(1) (directing the creation of the "Do Not Call" list to protect "residential telephone subscribers' privacy") (emphasis added); 47 CFR § 64.1200(c)(2)) ("No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]") (emphasis added). (*See* Winkler Decl. ¶ 7 & Exs. B-2, B-3, B-4.) She is thereby deprived of standing to sue and taken her out of the ambit of the TCPA.

As with her first cause of action related to automatic dialing equipment, Plaintiff's opting in to receiving contact from these Defendants also bars liability under 47 U.S.C. § 227(c). *See* 47 CFR § 64.1200(c)(2)(ii) (no liability when the solicitor "has obtained the subscriber's prior express invitation or permission").

Federal regulations further preclude liability under § 227(c) for the making of calls to subscribers on the "Do Not Call" list when the call "is the result of error and that as part of its routine business practice, it meets . . . [certain] standards." 47 CFR § 64.1200(c)(2)(i). The relevant standards include the following: (1) written procedures designed to comply with the "Do Not Call" list; (2) training of personnel in compliance; (c) accessing the "Do Not Call" list to ensure compliance with the law; (d) not disseminating the list for any purpose other than ensuring compliance. 47 CFR § 64.1200(c)(2)(i). The Starter Homes Defendants are prepared to establish that they have procedures to ensure compliance with these regulations. (*See* Winkler Decl. ¶ 6.)

For all of these reasons, the Starter Homes Defendants cannot be liable under the TCPA.

**B. N.C. Gen. Stat. § 75-102 and 104(a) Claims**

A "telephone subscriber" cannot sue a telephone solicitor under N.C. Gen. Stat. § 75-102 for calling someone on the "Do Not Call" registry, unless

6

the plaintiff is an "individual who subscribes to a residential telephone service." N.C. Gen. Stat. § 101(10) (defining "telephone subscriber") (emphasis added). As previously discussed, Plaintiff uses the number in question for her businesses and appears to have advertised it widely for that work. (*See* Winkler Decl. ¶ 7 & Exs. B-2, B-3, B-4.) Therefore, she is not a "residential" subscriber covered by § 75-102.

Additionally, as with her TCPA claims, Defendants believe Plaintiff opted into receiving contact from them, which further precludes liability. N.C. Gen. Stat. § 103(a)(1) (defense when contact made with "subscriber's prior express invitation or permission."); *see also id.* § 103(a)(2) (exception for an established business relationship between the subscriber and solicitor).

Plaintiff also asserts a claim under N.C. Gen. Stat. § 75-104(a) (the restriction on use of automatic dialing systems) for sending unsolicited text messages. (See SAC ¶¶ 106-111.). Nevertheless, Defendants contest that they use the automatic dialing systems regulated by this statute. Additionally, it is a defense to suits under Article 4 of Chapter 75, that "the telephone solicitor complied with G.S. 75-102(d)." Section 75-102(d) provides:

> Every telephone solicitor shall implement systems and written procedures to prevent further telephone solicitations to any telephone subscriber who has asked not to be called again at a specific number or numbers or whose telephone number appears in the "Do Not Call" Registry. Every telephone solicitor shall

7

> train, monitor, and enforce compliance by its
> employees and shall monitor and enforce compliance
> by its independent contractors in those systems and
> procedures. Every telephone solicitor shall ensure that
> lists of telephone numbers that may not be contacted
> by the telephone solicitor are maintained and
> recorded. Compliance with the time requirements
> within the Telemarketing Sales Rule for incorporating
> and complying with updated versions of the "Do Not
> Call" Registry shall constitute compliance with North
> Carolina law.

The Starter Homes Defendants expect to establish they have procedures like those described in this section, which would thereby bar Plaintiff's recovery under either N.C. Gen. Stat. § 75-102 or N.C. Gen. Stat. § 104(a). (*See* Winkler Decl. ¶ 6.)

### C. N.C. Gen. Stat. § 66-261 Claim

The fifth cause of action in Plaintiff's Second Amended Complaint does not state an actual cause of action for which Plaintiff may sue under North Carolina law. Pursuant to N.C. Gen. Stat. § 66-261, certain telephone solicitors are required to register with the North Carolina Secretary of State. No express private right of action is created to enforce this provision. Instead, the consequences for its violation are limited to criminal prosecution and a civil action by the Attorney General. *See* N.C. Gen. Stat. § 66-266. North Carolina courts rarely recognize implied causes of action, and generally a private cause of action for violation of a statute only exists when such a remedy is expressly

8

created by the legislature. *See Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 339, 511 S.E.2d 41, 44 (1999).

No North Carolina appellate court has ever recognized a private cause of action under § 66-261, nor does a search of federal case law find any case where the court found that it creates one. Moreover, the existence of a statutory scheme for enforcement by state agencies is strong evidence against an implied right of action. *See, e.g., Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 281, 715 S.E.2d 541, 552 (2011). Therefore, even assuming Defendants failed to comply with § 66-261 (an assertion they dispute), Plaintiff has no cause of action under this statute.

**D. N.C. Unfair and Deceptive Trade Practices Act Claim**

Plaintiff's claim under the North Carolina Unfair and Deceptive Trade Practice Act ("UDTA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, also fails as a matter of law. First, Plaintiff cannot establish any unfair or deceptive conduct by Defendants. Moreover, even if she could establish unfair or deceptive conduct, Plaintiff cannot establish that it "proximately caused an actual injury" to her specifically. *Noble v. Hooters of Greenville, LLC*, 199 N.C. App. 163, 166, 681 S.E.2d 448, 452 (2009) ("The elements of a claim for unfair or deceptive trade practices are: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual

9

injury to the plaintiff or to his business." (internal quotation marks and citations omitted). Plaintiff did not engage in any business with these Defendants. As a result, there could not have been the required reliance, let alone reasonable reliance, by her on any purported misrepresentation by the defendants. *See DC Custom Freight, LLC v. Tammy A. Ross & Assocs.*, 273 N.C. App. 220, 222, 848 S.E.2d 552, 232 (2020) (citing *Bumpers v. Comm'ty Bank of N. Va.*, 367 N.C. 81, 747 S.E.2d 220 (2013)) ("UDTP claims based on misrepresentation require a showing of both actual and reasonable reliance to prove that the misrepresentation caused damages[.]").

Therefore, Plaintiff cannot make out the elements of a UDTP claim.

## II. DAMAGES ISSUES

Throughout discovery, Plaintiff has disclaimed any actual injuries or damages. (*See* D.E. #53-2: Ex. B: Pl.'s Dep. 89:20-93:8; *see also* D.E. #53-C: Ex. 3: Pl.'s Ans. to Starter Home Interrog. Nos. 4 &. 11; Pl.'s Resp. to Starter Home Request for Prod. of Doc. Nos. 7 & 11.) Accordingly, Defendants have asked that Plaintiff not be allowed to present evidence on, or ask the jury to award damages for, any alleged physical, emotional/psychological, or economic harm. This would leave only statutory damages for Plaintiff. *See* 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5); N.C. Gen. Stat. § 75-105(b).

10

Defendants also ask that Plaintiff be precluded from have a double recovery by receiving damages more than once for the same call or text under different provisions of the TCPA. *See Carter v. Rogers*, 805 F.2d 1153, 1156-57 (4th Cir. 1986); *see also Hysell v. Iowa Public Serv. Co.*, 559 F.2d 468, 473 (8th Cir. 1977) ("Duplication of recovery by compensating a single injury under two different names is, of course, to be avoided."). Defendants similarly ask that Plaintiff be precluded from a similar such double recovery utilizing separate provisions of Chapter 75, Article 4, of the N.C. General Statutes for the same call or text message. *See Markham v. Nationwide Mutual Fire Ins. Co.*, 125 N.C. App. 443, 455, 481 S.E.2d 349, 357, *disc. review denied*, 346 N.C. 281, 487 S.E.2d 551 (1997); *see also Holland v. Southern Public Utilities Co.*, 208 N.C. 289, 292, 180 S.E. 592, 594 (1935).

Furthermore, if the jury returns a verdict against these Defendants, it is anticipated that there will need to be posttrial motions to ensure that Plaintiff is not receiving a double recovery vis-à-vis the settlement she previously reached with the defendants who have been dismissed. Those defendants were dismissed through a confidential settlement agreement; the Starter Homes Defendants are unaware of the terms of that settlement and the amount Plaintiff received as a settlement.

11

Though Plaintiff makes a claim for attorneys' fees, being *pro se*, Plaintiff cannot recover attorneys' fees (even though she is a member of the Missouri bar). *See Kay v. Ehrler*, 499 U.S. 432, 437-38, 113 L. Ed. 2d 486 (1991) (lawyer proceeding *pro se* not entitled to attorney's fees under Title VII); *Rossmann v. Lazarus*, No. 1:08-cv-316-JCC, 2009 U.S. Dist. LEXIS 17082, 2009 WL 586416, at *3 (E.D. Va. Mar. 5, 2009) ("[T]he majority of the circuits have weighed in against allowing *pro se* attorney's fees for attorneys in various types of actions[.]").

Plaintiff's Second Amended Complaint makes a request for equitable relief, namely an injunction, but in the event any violation of law is found, damages will suffice. Thus, there is no need for recourse to equitable remedies. *See, e.g., Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020) (plaintiff must show legal remedies are inadequate before pursuing equitable relief).

### III. OTHER MOTIONS

At present, both Plaintiff and Defendants have pending motions *in limine*. (D.E. #53 & #55.) Defendants have also served and filed objections to several of the exhibits on Plaintiff's exhibit list because, *inter alia*, they were not disclosed until service of that exhibit list, well after the deadline for completion of discovery. (D.E. #59.)

## CONCLUSION

For the above stated reasons and for the reasons to be established at trial, Defendants respectfully ask that Plaintiff have and recover nothing from this action; that her case be dismissed with prejudice; that costs be taxed against Plaintiff; and that Defendants have such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 30th day of January, 2023.

/s/B. Tyler Brooks
B. Tyler Brooks (N.C. Bar No. 37604)
Attorney for Starter Homes Defendants
LAW OFFICE OF B. TYLER BROOKS, PLLC
P.O. Box 10767
Greensboro, North Carolina 27404
Telephone: (336) 707-8855
Fax: (336) 900-6535
Email: btb@btylerbrookslawyer.com

*Counsel for Defendants*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

The undersigned counsel certifies that the foregoing brief complies with Local Civil Rule 7.3(d) in that, according to the word count feature of his word processing software, it contains less than 6,250 words, excluding those parts that are allowed to be excluded by the Rule. According to the word count feature, this brief contains 2,778 words.

/s/B. Tyler Brooks
B. Tyler Brooks

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served by email and CM/ECF on January 30, 2023.

/s/B. Tyler Brooks
B. Tyler Brooks

**SERVED:**

Tammy McCrae-Coley
1400 Battleground Avenue
Suite 116-L
Greensboro, NC 27408
tammycoleyjd@gmail.com

*Pro se Plaintiff*