IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT
OF NORTH CAROLINA

| | | |
|---|---|---|
| TAMMY MCCRAE-COLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-666 ) |
| | ) | **Plaintiff's Trial Brief** |
| | ) | |
| STARTER HOMES PROGRAMS INC., | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**Introduction**

The Federal Do-Not-Call Registry was established in 2003 to provide a safe haven from unwanted telemarketing calls. It has almost three million active registrations, including the Plaintiff, Tammy McCrae-Coley since 2005. Despite the Plaintiff's registration, STARTER HOME PROGRAMS INC. Dba RentToOwnHomefinders.com, STARTER HOME INVESING INC. Dba RentToOwnHomefinders.com, STARTER HOME PROGRAMS INC. dba LendingCloudHomes.com, STARTER HOME INVESTING INC. dba LendingCloudHomes.com, XANADU MARKETING, INC individually (Assumed Name APEX PAGE BUILDER), and dba CloudBasedPersonalLoans.com, XanaduTacking.com and INSURANCE-REVIEWED.COM (all owned by Xanadu Marketing and Joseph Delfgauw) transmitted eight text messages and a telephone call to her to market their products and services. (*See Exhibit A*)

The Plaintiff notified to Edward Winkler, the Defendants' In-House Counsel by email on May 16, 2021 about the first three text messages sent to her on May 13, 2021. In the same email the

Plaintiff also notified the Defendants that she had been on the Federal Do-Not-Call Registry since May 14, 2005 and the Defendants continued to text and later in November solicited her by calling her cellular telephone. The Defendants knew that she was on the national DNC lists, but the Defendants kept texting/calling, even after the start of litigation. They texted/called May 2021 – Dec 2021 even after being notified by email on May16, 2021 that their texting was unwanted and unconsented. Looking at the multiple complaints online and specifically on the Better Business Bureau website, similar complaints as mine from the same entities span back to 2020.  The Defendants are repeat offenders. There are also multiple federal cases in litigation for similar complaints.

      There are two statutes Plaintiff primarily relies on - those being the Telephone Consumer Protection Act ("TCPA") and the North Carolina Telephone Solicitation Act.  Plaintiff also relies on N.C. Gen Stat § 75-1.1 with respect to the damages portion of her case which will be discussed in detail towards the end of this brief. TCPA was enacted to protect consumers from such invasive and unwanted telemarketing practices.  TCPA, gives rise to the claims asserted and permits a consumer to sue the entity that called the Plaintiff as well as the entity on whose behalf the calls were made.  The second statute Plaintiff relies on is the North Carolina Telephone Solicitation Act. The law essentially states that the residents of North Carolina should have a choice not to have telemarketers contact them.

## Legal Claims

      Plaintiff alleges the Defendants violated the TCPA's provisions that prohibit solicitation calls to persons on the National Do Not Call Registry. The TCPA regulates the marketing of goods or services by telephone. The National Do Not Call Registry provisions prohibit telemarketers from placing more than one call to a residential telephone line within a twelve month period if the line was listed on the registry for at least 30 days prior to the calls. (47 U.S.C. § 227(c)(5).)  A person who

receives calls in violation of these laws may bring an action against the caller or the party on whose behalf the call was made. (47 U.S.C. § 227(c)(5).)

The North Carolina Telephone Solicitation Act also regulates the marketing of goods or services by telephone. It also prohibits telephone solicitation to telephone subscribers if the telephone subscriber's telephone number appears in the latest edition of the "Do Not Call" Registry and the caller does not have consent from the solicitor. (§ 75-102.) A person who receives calls in violation of these laws may bring an action against the caller or the party on whose behalf the call was made. (**§ 75-105(b).** Both of these statutes allow the telephone subscriber to revoke any prior consent given at any previous time.

## Overview of Evidence

1. All but one of the text messages came from short code 33959. One of the text messages came from short code 27142. The Defendants have admitted in their Answer that they owned these two short codes. Even though the text messages may be soliciting different goods and services from several companies, the text messages were transmitted from the same short codes. The company transmitting them were the same.

2. The telephone call to market to the Plaintiff was from a spoofed telephone number. The number on the caller ID was 336-654-6305. This was an inactive telephone number that the Defendants used to hide their true identity in hopes that the called party may be more apt to take a call from a local 336 area code number.

3. The Defendants have never denied sending the text messages or making the call. They only claim that they had Plaintiff's consent which is categorically and patently false.

4. On May 21, 2021 The Defendants' In House counsel via email promised the Plaintiff that they would take her name out of their database and that there would not be any future communications

from them. "The company apologizes for any inconvenience this may have caused and has removed your information from its data base to ensure that you receive no future communication."

5. The text messaging continued and the solicitation by telephone call happened after the Defendants promised to stop. The Defendants sent six additional unsolicited advertisements to the Plaintiff's personal cell phone. Four of the text messages and the phone call were transmitted *after* the commencement of this lawsuit.

6. The Plaintiff included photographs of all the text messages in her 2nd Amended Complaint.

7. The Plaintiff included in the 2nd amended complaint the opening script from the caller as the caller introduced who she was calling on behalf of and why she was calling. She later went on to give the actual telephone number of the Defendant www.RentToOwnHomeFinders.com. (*See Exhibit B*)

8. The Plaintiff requested of Defendants in her Interrogatories a complete chain of possession of any prior expressed written or oral consent or express invitation and permission possessed by Defendants or their agents and/or affiliates to solicit the Plaintiffs wireless telephone number starting from the original lead entity up to their organization's possession of this alleged consent including the name of the company(ies), name of the Officers, mailing and physical address, telephone number, and email address. The Defendant's never provided such info.

9. During the deposition testimony of Joseph Delfgauw, he stated that they do not know who owns or controls the website they alleged Plaintiff opted into and that they could not even state the date of such opt –in, nor could they say that it was not a bot or affiliate marketer. (*See Exhibit C*)

10. During the unwanted solicitations, none of the Defendants were registered as a North Carolina Telephonic Seller and 19 months later still not registered yet they are still telemarketing into North Carolina. (*See Exhibit D*)

11. The Defendants sent the Plaintiff thinly veiled threats to impugn her two professional licenses if she did not drop this lawsuit. (*See Exhibit E*)

## The Defendants' Violations Were Willful and Knowing 47 USC 227(b)(3) and (c)(5)

The Court may treble TCPA damages if the violations are knowing and willful. (47 USC 227 (c)(5)). To recover treble damages, the Plaintiff must show that the Defendant(s) "willfully and knowingly violated" the relevant provisions of the TCPA and must persuade the Court, acting in its discretion, that treble damages are appropriate. While a finding of willfulness does not require bad faith, it does require that the caller "have reason to know, or should have known, that his conduct would violate the statute."(*Krakauer v Dish Network* 1:114-cv CCE-JEP Doc 338)

The Defendants sent their first three text messages on May 13, 2021. The Plaintiff sent an email to the Defendants on May 16, 2021 just three days later hoping to stop future text messages. The response from the Defendants was an email telling the Plaintiff that she had opted in to their "partner's" website www.mommiessavingsclub.com and they had captured her information including her IP address and they had done nothing wrong. (*See exhibit G*) Emails later followed from Edward Winkler with thinly veiled threats that they would impugn Plaintiff's two professional licenses by falsely associating "fraud and dishonesty" with her name by filing a frivolous lawsuit. "The defendants would rather not accumulate debt to defend this frivolous lawsuit and I would assume that in your line of work, you would rather not have your name associated with allegations of fraud and dishonesty. By dismissing the lawsuit or accepting the $__ the defendants have as settlement, everyone can walk away unscathed and with reputations intact."

Even after being notified that she did not opt in and the texts were unwanted and unconsented to she continued to receive text messages until late December 2021 and one spoofed solicitation by telephone call in November 2021. Eight text messages and one spoofed telephone call total. The Defendants were notified in May 2021 but they continued for six months and even after this litigation commenced, the Defendants were still texting and calling. The Defendants' behavior was willful and knowing. The Defendants knowingly and willfully transmitted the text messages and telephone call

with no prior consent from the Plaintiff. Even when the Plaintiff notified them they continued to market to her residential cell phone. When they were notified that the plaintiff was on the DNC registry the illegal contacts did not stop. Defendants promised her that the texts would stop and they continued. They did not put her on their internal DNC list (if they even have one) and based on the CEO Joseph Delfgauw's deposition testimony, they do not scrub their list against the Federal DNC list for any purpose and there was no established relationship between the Plaintiff and Defendants.

### The Plaintiff Has Been Harmed

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019) ("This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace.")

The Plaintiff placed her telephone number on the Federal Do Not Call Registry on May 14, 2005. The Plaintiff is an individual that subscribes to a residential service from a wireless telephone company. Her family's cellular telephone account is in the name of the Plaintiff and has been since the early 2000's.

*Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 643-44 (N.D.W. Va. 2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id*. at 1548. The Supreme Court held that the Ninth Circuit Court of Appeals had addressed the particularity requirement of injury in fact—the requirement that the injury "must affect the plaintiff in a personal and individual way")

These calls interrupted her time with her family, disrupted time while she was in training for her employment. The calls used her battery and storage of her cell phone. The calls awaken her during her quiet time and naps and was an overall nuisance especially since she had told them to stop calling.

*Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 644 (N.D.W. Va. 2016) ("*Spokeo* confirms that either tangible or intangible injuries can satisfy the requirement of concreteness.")

*Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 645 (N.D.W. Va. 2016) ("One of the ways that *Spokeo* identifies to establish that an intangible injury is concrete is to show that it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo* , at 1549. Invasion of privacy is just such an intangible harm recognized by the common law. " *See Exhibit F* for particularized list of damages or harms suffered by the Plaintiff.

Plaintiff has suffered tangible and intangible harm particular to her by the unwanted and unsolicitedtext messages and the telephone call sent to her cellular telephone number with the unwanted and unconsented calls.

### **The Plaintiff is a Telephone Subscriber**

The Defendants will contend that the Plaintiff's cellular telephone number is not a residential telephone line because of information that they found on the internet from 2017 and therefore argue that Plaintiff does not have standing. None of this "information" is information that the Plaintiff put out to the public. The law requires the Defendants to prove that the Plaintiff put her information out for business – not a bot scraping the internet, not someone altering documents.

One document is a document dated 2019 and 2020 but it has an employer that the Plaintiff had not been employed by from since mid 2017 – mid 2018. The Plaintiff is wondering if the document has been altered by the Defendants as they have done with another document in my case and also in another case they are litigating simultaneously in the State of Washington which is remarkably similar to the instant case.

Even if what they are trying to portray were to be true – that Plaintiff put her personal number out to the public for business purposes, this would have been five years ago. What they are trying to portray would have happened three to four years prior to the Defendants' unconsented to texts and call. There is absolutely no overlapping of time between what they are alleging and their violations starting in May 13, 2021. Plaintiff currently has a separate business number that she puts out to the public for business purposes (since 2018) and at that time had a separate business number prior to that which was a different number. All of Plaintiff's marketing uses her designated business number.

Plaintiff does use the number at issue (personal cell number) when she register for any licenses and registrations that she has earned or with a government agency (Veteran's Administration, State and Federal Mortgage License, Missouri Bar, etc) because these are Registration and licenses earned by the Plaintiff. The Plaintiff wants to make sure that if any issues arise with her license that the licensing entity can quickly reach her. These are not advertising websites. These are licensing databases.

Presumptively residential; 29 See 2003 TCPA Order, 18 FCC Rcd at 14039, para. 36 (stating there is a presumption that "wireless subscribers who ask to be put on the national do-not-call list [are considered] to be 'residential subscribers.'"). The Commission determined that interpreting

"residential" to encompass wireless subscribers was "consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections."

The Defendants may overcome the presumption by showing that plaintiffs use their cell phones to such an extent and in such a manner that the presumption is rebutted. That is, defendants may rebut the presumption and show that the cell phone is a business line. Consistent with the decisions of most district courts to have addressed the issue, in determining whether the presumption is rebutted, we will consider the following factors: **(1)** how plaintiffs hold their phone numbers out to the public; **(2)** whether plaintiffs' phones are registered with the telephone company as residential or business lines; **(3)** how much plaintiffs use their phones for business or employment; **(4)** who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line. (*Chennette v. Porch,* 2022 WL 6884084 (Oct. 12, 2022 9th Cir.))

The Plaintiff does not hold out the number at issue out for business. She has had her business number and have used it for business since 2018. The Plaintiff's telephone account is a personal account and covers all of the family telephones and the Plaintiff pays the telephone bill for the number at issue. The number at issue is used for personal use. All the Plaintiff's marketing materials display the business number and that has been the case since well before Defendants began contacting the Plaintiff.

There are companies that illegally scrapes information and pool information from public sites and list on the internet. If the Plaintiff's information has landed on one of those websites it has been without her consent, control and/or knowledge.

"Concurring, Judge Bress wrote to address the dissent's claims that the majority "usurps the role of the Federal Communications Commission" and enacts a regulatory framework that is based on the majority's "own policy preferences." He wrote that the majority opinion is correct to conclude that wireless users may be "residential subscribers" depending on how they use their phones; and that this conclusion is supported by the FCC's guidance, the conclusions of other courts, and plain common sense." (*Chennette v. Porch,* 2022 WL 6884084 (Oct. 12, 2022 9th Cir.))

The Defendants will have a high Bar to meet to show that the Plaintiff's telephone number is a business number. 1. The supposed time-frame that they claim the Plaintiff put the number at issue out to the public for business was 3-4 years prior to these unconsented texts/calls and they have not claimed any since then. 2. When looking at the 5 factors that the court takes into consideration – the plaintiff prevails on all the factors, and 3. Assuming that the Defendants accusation is true. We have not found case law that states if the telephone number was previously used years prior for business it is disqualified from the protections of the TCPA and the North Carolina Telephone Solicitations in the future. In *Noviello v. Holloway Funding* No. 3:22-cv-52-BN, 2023 WL 128395 (N.D. Tex. Jan. 9, 2023 a fairly recent case the Plaintiff's number had been put out for business at the time of the solicitation and the Court still decided that the Plaintiff's telephone was a residential telephone and afforded it all the protections. (*Noviello v. Holloway Funding* No. 3:22-cv-52-BN, 2023 WL 128395 (N.D. Tex. Jan. 9, 2023).

## Second Cause of Action – 47 U.S.C. 227(c) - Federal Do-Not-Call Violation

## (TCPA)

The elements of Plaintiff's second cause of action are clear and unambiguous. She must prove that 1.) there was telephone solicitation (which includes text messages) from the Defendant(s)-telephone solicitors(s) to the Plaintiff's telephone number: 2) that he telephone number was previously listed on the Federal Do Not Call Registry; and 3) that said call was made without her *prior expressed written consent*. 47 U.S.C. 227(c )(5).

With respect to the first element, the Defendants have admitted in emails to the Plaintiff and in sworn deposition testimony that they did send the text messages and the telephone call at issue. The Defendants have never denied sending them. Regarding the second element that the Plaintiff's telephone number was and still is on the Federal Do Not Call Registry, Plaintiff registered this telephone number on the Federal Registry on May 14, 2005 and has never removed it.

With respect to the third element that the text messages and telephone call were made without the Plaintiff's prior express consent. The Plaintiff's asserts that she never gave the Defendants consent. The Telemarketing Sale Rule states that the caller/telephone solicitor has the burden to prove that they had the Plaintiff's prior express consent before the solicitation and they have not.

**Federal – 16 CFR 310.4(b)(1)(iii)(B)(1-2)**

(1 ) Can demonstrate that the seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization the calls made by or on behalf of a specific party may be placed to that

person, and shall include the telephone number to which the calls may be placed and the signature of that person; or

(2) Can demonstrate that the seller has an established business relationship with such person and that person has not stated that he or she does not wish to receive outbound telephone calls.

Also per FCC 15-72 Declaratory Ruling and Order: The caller has the burden to prove they obtained the necessary prior express consent.

"Moreover, we emphasize that regardless of the means by which a caller obtains consent, under longstanding Commission precedent, if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior express consent."

The Plaintiff has a requested a copy of the consent from the Defendants via email, Interrogatories, Request for production and from depositions of the CEO and their In House Counsel since May, 2021. They have failed to produce a copy of the actual consent in the 19 months since the first unsolicited text message and multiple request.

The Defendants' representatives Joseph Delfgauw's and Edward Winkler's testimony have changed over time on how they got the Plaintiff's information and alleged consent and depending on who the Plaintiff requests this information from their response changes.

The Defendants contend that Plaintiff opted in using a 2014 website that does not work – www.mommiesmavingsmlub.com. Nothing on the website works when you click on it. Joseph

Delfgauw, CEO testified during his Deposition that they purchase the Plaintiff's info and do not actually know who owns or controls the website. (*see Exhibit A*)

There was no prior established relationship. The bottom line is that the Defendants willfully and knowingly continued to harass the Plaintiff by texting and calling her cellular telephone after they promised that there would be no more future communications and even after going through the extraordinary steps of filing a lawsuit. That did not stop there marketing efforts.

### Third Cause of Action – N.C. Gen Stat §75-102

Under the North Carolina Telephone Solicitations Act, located generally at Article 4 – Telephone Solicitations: §75-100 et seq., much like its federal counterpart, this legislation aims to protect consumers against the modern day barrage of unwanted telemarketers invading the American family household. Plaintiff's third cause of action comes from §75-102(a), (b), (d) and (i).

**§ 75-102(a)** reads, [e]xcept provided in G.S. 75-103, no telephone solicitor shall make a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber's telephone number appears in the latest edition of the "Do Not Call" Registry. To prove a prima Facie case under this provision of the North Carolina Telephone Solicitation Act, Plaintiff has to prove three things. She must simply show that 1) there was a telephone solicitation from Defendant(s) to the Plaintiff telephone; 2) that at all relevant times Plaintiff's phone numbers were on the Federal Do Not Call Registry and 3) that Plaintiff never gave Defendant(s) prior expressed invitation or permission. Having addressed each of these issues

fully above, Plaintiff would incorporate those specific discussions by reference as contained herein.

**§ 75-102(b)** reads, No telephone solicitor shall make a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber previously has communicated to the telephone solicitor a desire to receive no further telephone solicitation from the telephone solicitor to that number.

The Plaintiff emailed the Defendant's on May 16, 2021. This emailed stated that she was receiving Text messages that were unwanted and unconsented. The Defendant's May 21, 201 emailed response to the Plaintiff was "The company apologizes for any inconvenience this may have caused and has removed your information from its data base to ensure that you receive no future communication." Even though the Defendants promised to stop, the unwanted solicitations continued even once litigation started. The Defendants did not discontinue sending solicitations to the Plaintiff's telephone until six months after they promised to discontinue – December 2021.

**§75-102(d)** reads:   Every telephone solicitor shall implement systems and written procedures to prevent further telephone solicitations to any telephone subscriber who has asked not to be called again at a specific number or numbers or whose telephone number appears in the "Do Not Call" Registry. Every telephone solicitor shall train, monitor, and enforce compliance by its employees and shall monitor and enforce compliance by its independent contractors in those systems and procedures. Every telephone solicitor shall ensure that lists of telephone numbers that may not be contacted by the telephone solicitor are maintained and recorded. Compliance with the time requirements within the Telemarketing

Sales Rule for incorporating and complying with updated versions of the "Do Not Call" Registry shall constitute compliance with North Carolina law.

The Plaintiff emailed the Defendants on May 16, 2021 to inform them that the Defendant's text messages were unwanted and unconsented. The Defendants emailed the Plaintiff on May, 2021 the following: "The company apologizes for any inconvenience this may have caused and has removed your information from its data base to ensure that you receive no future communication." The messages and telephone call continued for six months after the Plaintiff notified them in writing stop. Clearly systems and training were lacking to put it mildly. During the October 17, 2022 deposition CEO, Joseph Delfgauw, he stated that their Do Not Call training only takes 5 min. "So our policy is here's the law, but because they opt in, that supersedes the law and so because of that, there is no need for much longer than five-minute conversation about the policy." The continuing of the messages to the Plaintiff and the similar complaints on the Better Business Bureau show there is a lack of systems and training.

**§ 75-102(i)** reads, No telephone solicitor shall cause misleading information to be transmitted to users of caller identification technologies or otherwise block or misrepresent the origin of the telephone solicitation. No provider of telephone caller identification services shall be held liable for violations of this subsection committed by other individuals or entities. It is not a violation of this subsection for a telephone solicitor to utilize the name and number of the entity the solicitation is being made on behalf of rather than the name and number of the telephone solicitor.

The text messages were transmitted to the Plaintiff's telephone number using short codes 33959 and 27142. The Defendants admitted during conversations with the Plaintiff and in the Answer to the Plaintiff's Second Amended Complaint that the Defendant owns these two short codes. Because of the short codes, the Plaintiff could not identify the sender of the text messages without extensive research.

The North Carolina Solicitation Act only requires a Telephone subscriber to show that the Defendants violated one section of this article for the Plaintiff to prevail. The Plaintiff does not have to prove all four sections listed (even though she believes she can) in this case for the Plaintiff to prevail.

§ 75-105(b)    A telephone subscriber who has received a telephone solicitation from or on behalf of a telephone solicitor **in violation of this Article** may bring any of the following actions in civil court:

(1)    An action to enjoin further violations of this Article by the telephone solicitor.

(2)    An action to recover five hundred dollars ($500.00) for the first violation, one thousand dollars ($1,000) for the second violation, and five thousand dollars ($5,000) for the third and any other violation that occurs within two years of the first violation.

### Fifth Cause of Action – N.C. Gen Stat § 66-261 – Failure to Register as a Telephonic Seller

North Carolina law mandates that [n]ot less than 10 days before commencing telephone solicitation in this state, a telephonic seller shall register with the secretary by filing the information required in G.S. 66-262 and paying the filing fee of $100.00. A telephonic

seller is doing business in this State if it solicits or attempts to solicit prospective purchasers from locations in this State or solicits or attempts to solicit prospective purchasers who are located in this State." NC Gen Stat § 66-261. **"Any violations of this article shall constitute an unfair and deceptive trade practice in violation of G.S. 75-1.1."** NC Gen Stat § 66-266(a). In a successful action for unfair and deceptive trade practices a Plaintiff may recover damages. Under NC Gen Stat §75-16, if a violation under §75-1.1 is found, the actual damages are trebled. Trebled damages are damages that, by statute, are three times the amount of damages awarded. Trebling of the damages is automatic once a violation is shown because the award of trebled damages is right of prevailing plaintiff and is not subject to judicial review. *Marshal v Miller*, 302 N.C. 539,547,276 S.E.2d 397, 402 (1981).

In addition to an email from the North Carolina Secretary of State confirming that the Defendants were not registered as Telephonic Seller in this state, CEO Joseph Delfgauw admitted in their sworn deposition testimony that they still were not registered as a Telephonic Seller within this State and therefore, Plaintiff has satisfied her burden of Proof with respect to this claim.

### Sixth Cause of Action – N.C. Gen Stat § 75-1.1 – Deceptive Trade Practices

North Carolina law mandates that [n]ot less than 10 days before commencing telephone solicitation in this state, a telephonic seller shall register with the secretary by filing the information required in G.S. 66-262 and paying the filing fee of $100.00. A telephonic seller is doing business in this State if it solicits or attempt to solicit prospective purchasers from locations in this State or solicits or attempts to solicit prospective purchasers who are

located in this State." NC Gen Stat § 66-261. "Any violations of this article shall constitute an unfair and deceptive trade practice in violation of G.S. 75-1.1." NC Gen Stat § 66-266(a). In a successful action for unfair and deceptive trade practices a Plaintiff may recover damages. Under NC Gen Stat §75-16, if a violation under §75-1.1 is found, the actual damages are trebled. Trebled damages are damages that, by statute, are three times the amount of damages awarded. Trebling of the damages is automatic once a violation is shown because the award of trebled damages is right of prevailing plaintiff and is not subject to judicial review. Marshal v Miller, 302 N.C. 539,547,276 S.E.2d 397, 402 (1981). Defendants have admitted in their sworn deposition testimony that they were not registered as a Telephonic Sellers within this State and therefore, Plaintiff has satisfied her burden of proof with respect to this claim.

In addition to an email from the North Carolina Secretary of State confirming that the Defendants were not registered as Telephonic Seller in this state, CEO Joseph Delfgauw admitted in their sworn deposition testimony that they still were not registered as a Telephonic Seller within this State and therefore, Plaintiff has satisfied her burden of Proof with respect to this claim.

This the __30th___ day of January 2023.

_/s/ Tammy McCrae-Coley___
Tammy McCrae-Coley
TammyColeyjd@gmail.com
1400 Battleground Ave.
Suite 116 – L
Greensboro, NC 27408 3
336-491-3163

## CERTIFICATE OF SERVICE

This is to certify that the undersigned Plaintiff has this day served the foregoing **TRIAL BRIEF** on STARTER HOME PROGRAMS INC. et. al. depositing a copy via regular mail, postage paid, addressed to the following:

B. Tyler Brooks
Law Office of B. Tyler Brooks, PLLC
P.O. Box 10767
Greensboro, North Carolina 27404
Main: (336) 564-6255
Cell: (336) 707-8855
Fax: (336) 900-6535
btb@btylerbrookslawyer.com

                                            _/s/ Tammy McCrae-Coley/___ Tammy McCrae-Coley
TammyColeyjd@gmail.com 1400 Battleground Ave.
Suite 116 – L
Greensboro, NC 27408
336-491-3163

## CERTIFICATE OF WORD COUNT

      I hereby certify that pursuant to Local Rule 7.3(d)(1), the foregoing has a word count is less than 6250 words including the caption, signature block, and certification of word count. This document was prepared in Microsoft Word, from which the word count is generated.

Dated this 30th day of January, 2023.

      _/s/ Tammy McCrae-Coley/____
      Tammy McCrae-Coley          TammyColeyjd@gmail.com
      1400 Battleground Ave.
      Suite 116 – L
      Greensboro, NC 27408
      336-491-3163